UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO ALEXANDER ESCALANTE VARGAS, | Case No. 5:26-cv-01208-MCS-AJR |
| Petitioner, | **ORDER RE: MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 3)** |
| v. | |
| FERETI SEMAIA, et al., | |
| Respondents. | |

Petitioner Guillermo Alexander Escalante Vargas brings this action for a writ of habeas corpus. (Am. Pet., ECF No. 6.)[1] Petitioner filed a motion for a preliminary injunction. (Mot., ECF No. 3.) The Court ordered briefing on the motion. (Order Setting Br. Schedule, ECF No. 5.) Respondents Fereti Semaia, the Warden of the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; Ernesto Santacruz Jr., the Acting Field Office Director for the Enforcement and Removal Operations;

---

[1] The amended petition is identical to the initial petition in all respects, except the amended petition includes a verification signed by Melvin Ortiz Vargas, Petitioner's uncle and bond sponsor. (Am. Pet., Verification of Next Friend, ECF No. 6.) The verification appears to satisfy the requirements laid out in 28 U.S.C. § 2242.

1

Todd Lyons, the Acting Director of ICE; Kristi Noem, the Secretary of the Department of Homeland Security; and Pamela Bondi, the United States Attorney General, did not file a response to the motion. The Court deems the motion appropriate for decision without oral argument and vacates the hearing set for March 25, 2026. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.    BACKGROUND

According to the petition and motion materials, Petitioner is a citizen of El Salvador who came to the United States in 2014 as an unaccompanied child when he was 13 years old. (Mot. Ex. A ("Hellerstein Decl.") ¶ 4, ECF No. 3-2.)[2] Petitioner was detained by United States Border Patrol and placed in removal proceedings. (*Id.*) On May 12, 2022, United States Citizenship and Immigration Services ("USCIS") granted Petitioner Special Immigrant Juvenile Status ("SIJS") after a state court found that reunification with his parents was not viable due to abuse, abandonment, or neglect. (*Id.* ¶ 5; Mot. Ex. B ("SIJS Notice"), ECF No. 3-2.) Simultaneously, USCIS granted Petitioner deferred action on his removal proceedings for a period of four years. (Hellerstein Decl. ¶ 5; SIJS Notice.) When USCIS granted Petitioner the four-year deferral, it was aware that Petitioner had been arrested three separate times in 2020 and 2021, and that all charges were ultimately dismissed. (Hellerstein Decl. ¶¶ 6–7; *see also* Mot. Ex. C, ECF No. 3-2.) Petitioner contends he has not been arrested since receiving his deferral. (Am. Pet. ¶ 19.) On March 21, 2025, an immigration judge terminated Petitioner's removal proceedings. (Hellerstein Decl. ¶ 8; Mot. Ex. D, ECF No. 3-2.)

At approximately 6:00 a.m. on November 19, 2025, ICE officers arrested Petitioner outside his home as he was preparing to leave for work. (Hellerstein Decl. ¶ 9.) Later that day, USCIS issued a letter terminating Petitioner's deferred action. (*Id.*

---

[2] Petitioner filed a declaration authenticating the exhibits attached to his initial petition. (Authenticating Decl., ECF No. 7-1.)

¶ 10; Mot. Ex. E ("Termination Letter"), ECF No. 3-2.) The termination letter noted that Petitioner's SIJS status remained approved. (Termination Letter 1.) ICE provided Petitioner with a new Notice to Appear, which classified Petitioner for the first time as an "arriving alien" under the Immigration and Nationality Act ("INA"). (Mot. Ex. F ("Notice to Appear"), ECF No. 3-2.) Petitioner moved for redetermination of bond in the immigration court, (Hellerstein Decl. ¶ 12), but the immigration court denied the request because "[Petitioner] is now charged as an arriving alien, rendering him ineligible for release on bond." (Mot. Ex. G ("Custody Redetermination Order"), ECF No. 3-2.)

Petitioner challenges his reclassification as an "arriving alien," the revocation of his deferred action, and his continued detention without a bond hearing under the INA, Administrative Procedure Act, and the due process clause of the Fifth Amendment. (*See* Am. Pet. ¶¶ 40–82.) Petitioner seeks a preliminary injunction directing Respondents to immediately release him from custody and enjoining Respondents from re-detaining him absent certain conditions. (Proposed Order, ECF No. 3-4.)

## II.   LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions

go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III.   DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").

Petitioner is likely to succeed on the merits of his Fifth Amendment Due Process claim. (Mem. ISO Mot. 4–5, ECF No. 3-1; Am. Pet. ¶¶ 49–60.)[3] "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that

---

[3] The Court does not opine on Petitioner's likelihood of success on the merits of his other claims.

parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying *Mathews* to due process challenge to immigration detention, noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *17 (E.D. Cal. Oct. 17, 2025) (collecting cases extending *Mathews* "to the context of

immigration detention").

By failing to respond to Petitioner's motion, Respondents have conceded that, under *Mathews*, Petitioner should have been afforded a pre-deprivation hearing before a neutral adjudicator. First, the unrebutted evidence indicates Petitioner has a substantial private interest in remaining free from ICE custody. ICE initial released him from custody in May 2022 after the immigration judge granted him a deferral of removal and SJIS status. Since his release, he represents that he "maintained stable residence," "built a life," and "formed enduring attachments." (Am. Pet. ¶ 19.) Moreover, the immigration judge terminated Petitioner's removal proceedings in March 2025 because Petitioner was eligible to adjust his status based on his approved I-360 form. (*Id.* ¶ 20; Mot. Ex. D.) Due process thus protects Petitioner's liberty interest in remaining out of custody. *See A.R. v. Noem*, No. 5:25-cv-03565-MEMF-PVC, 2026 WL 194850, at *5–6 (C.D. Cal. Jan. 26, 2026) (concluding a noncitizen who had been granted deferred action status held a protected liberty interest in remaining out of custody); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *26–27 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention); *Garro Pinchi*, 792 F. Supp. 3d at 1034 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); *Fernández López*, 2025 U.S. Dist. LEXIS 205596, at *15 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

Respondents have also conceded that there is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—

Petitioner of his liberty interest absent a pre-detention hearing. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. *Zadvydas*, 533 U.S. at 690–91. The risk of wrongful deprivation is especially high here given evidence that Petitioner has complied with the terms of his release and that the immigration judge terminated his removal proceedings in 2025 based on Petitioner's apparent eligibility for an adjustment of status. (Am. Pet. ¶ 19; Hellerstein Decl. ¶ 8; Mot. Ex. D.) This unrebutted evidence tends to show that Petitioner does not pose a flight risk. Nor does the record tend to show that Petitioner was a danger to the community at the time of his arrest. While he had several arrests in 2020 and 2021, none of those arrests resulted in a conviction. (Hellerstein Decl. ¶¶ 6–7; *see also* Mot. Ex. C.) Moreover, ICE was aware of those arrests when it initially granted him the deferral. (Hellerstein Decl. ¶ 7.) This unrebutted evidence raises an inference that Respondents will have difficulty proving that Petitioner's detention is necessary to prevent danger to community or his flight. *Cf., e.g.*, *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1089–90 (N.D. Cal. 2025).

Respondents have also conceded that there are no meaningful countervailing government interests that support detaining previously paroled noncitizens like Petitioner without a pre-detention hearing. And indeed, many courts, including this one, have regularly found there are no such countervailing interests. *See, e.g.*, *Martinez Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases) (Scarsi, J.); *Sira-Hurtado v. Hermosillo*, No. C25-2173-KKE, 2025 U.S. Dist. LEXIS 232795, at *11 (W.D. Wash. Nov. 26, 2025) (finding the "Government's interest in re-detaining noncitizens such as Petitioner who were initially released years ago without a hearing is minimal: any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue."). Respondents' interest in re-detaining Petitioner without a pre-deprivation hearing is further diminished by the fact that he has been granted SIJS status and an immigration judge terminated his previous removal proceedings.

In all, Respondents have conceded that Petitioner is likely to succeed on the merits of his Fifth Amendment Due Process claim and, thus, should have been provided a pre-deprivation hearing before a neutral adjudicator under *Mathews*. Respondents have also conceded that Petitioner is suffering and will continue to suffer irreparable harm through his continued detention and that the balance of equities and public interest tip sharply in Petitioner's favor. Respondents have thus conceded that Petitioner is entitled to preliminary injunctive relief.

The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." (internal quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx), 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal harms suffered by the government, the Court will not require a security.").

## IV.    CONCLUSION

The Court grants the motion in substantial part. The Court issues a preliminary injunction as follows:

1.    Respondents shall release Petitioner from detention and return to him his personal effects forthwith.

2.    Respondents and all of their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are enjoined from re-detaining Petitioner without providing him a pre-detention hearing before a neutral adjudicator.

///

The Court declines to provide other relief requested in the application at this time. Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: March 23, 2026

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE